IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HARRY J. COLES, #A1075332, | ) | CIV. NO. 09-00167 DAE-BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING MOTION TO |
| | ) | DISMISS, OR, ALTERNATIVELY, |
| vs. | ) | FOR SUMMARY JUDGMENT |
| | ) | AND DENYING MOTION TO |
| JOSHUA EAGLE, ELTON | ) | JOIN PARTY |
| ROBERTSON, MICHAEL | ) | |
| HISATAKE, DR. MATTHEW ING, | ) | |
| UNKNOWN EMERGENCY ROOM | ) | |
| PERSONNEL AT QUEEN'S | ) | |
| MEDICAL CENTER, and QUEEN'S | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION TO DISMISS, OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT AND
DENYING MOTION TO JOIN PARTY**

On April 13, 2009, pro se plaintiff Harry J. Coles, a Hawaii state

prisoner, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Coles

alleges that his constitutional rights were violated when Honolulu Police

Department ("HPD") Officers Joshua Eagle and Elton Robertson used excessive

force when they arrested him, and The Queen's Medical Center ("QMC"), its

unknown emergency room employees, Emergency Room Physician Matthew Ing,

M.D., and HPD Officer Michael Hisatake denied him medical care.

Before the court is QMC and its unknown emergency room employees' motion to dismiss, or in the alternative, motion for summary judgment. The Motion is brought pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Rules 12(b)(6) and 56.  (Docs. #23, #24.)  Dr. Ing has substantively joined the Motion.  (Doc. #29, #30.)  Coles has filed an Opposition, and QMC and its emergency room employees have filed a Reply.  (Docs. #45-#48, #50, #51.)  Coles also moves to amend his Complaint to join a party, The Emergency Group, to which QMC and Dr. Ing have filed an opposition.  (Docs. #44, #52, #57.)

This matter is suitable for disposition without a hearing pursuant to the Local Rules of Practice for the United States District Court for the District of Hawaii, LR 7.2(d).  After consideration of the parties' Motions, and the entire record herein, the court GRANTS Defendants' QMC, its unknown emergency room employees, and Dr. Ing's Motion to Dismiss, or alternatively, Motion for Summary Judgment.[1]  All claims alleged against QMC, its unknown employees, and Dr. Ing are DISMISSED with prejudice.  The court also DISMISSES all

---

[1] Insofar as the court finds that Coles has failed to state a claim regarding specific claims or defendants, and does not consider matters outside of the pleadings to reach this decision, those claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A.  Insofar as the court considers matters outside of the pleadings, and finds that Coles fails to present a genuine issue of material fact precluding summary judgment, the court also dismisses those claims or defendants pursuant to Fed. R. Civ. P. 56.

claims alleged against Defendant Michael Hisatake, with leave granted to amend. Coles's Motion to Join Party is DENIED.

# I. <u>BACKGROUND</u>

Coles alleges that Defendants HPD Officers Eagle and Richardson used excessive force when they arrested him in the early morning of April 24, 2007.[2]  Coles claims that when Officer Hisatake arrived at the scene of the arrest, Coles was lying on the ground in handcuffs, and "it appeared that Coles had a bloody nose and had been beaten."  (Compl. 6.)  Hisatake took Coles to the QMC Emergency Room at approximately 3:35 a.m.  Coles alleges that he and Hisatake waited approximately 1½ hours, with Coles in handcuffs, before Coles was seen by a doctor.

Coles alleges that Dr. Ing "was assigned to treat Coles. . . . However, once Dr. [Ing] saw that Coles was a black man, . . . he refused to treat Coles and attempted to have Off. Hisatake force Coles to sign refusal of treatment papers." (Compl. 6.)  Coles states that, because Ing refused to treat Coles, and "contrary to Coles['s] requests for treatment," Hisatake took Coles to the police station.  When Coles continued to insist on being treated, another officer directed Hisatake to

---

[2]Coles's claims against Eagle and Richardson are not at issue in the instant Motions.

3

return Coles to QMC.  Upon their return, unknown QMC emergency room personnel again allegedly refused to treat Coles.  Coles states that QMC staff gave no reason for refusing to treat him, other than the fact that he was in HPD custody "and had received his injuries while being arrested."  (Compl. 6A.)  Hisatake then returned Coles to the police station, where Coles was placed in custody.

Coles alleges that he was never treated for his injuries and continues to suffer physical and mental pain.  Coles seeks compensatory and punitive damages.

## II.  LEGAL STANDARDS

A.    **Summary Judgment**[3]

The court must grant summary judgment if the papers show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A "genuine issue" exists if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

---

[3]Coles was given notice of the nature and consequences of a summary judgment motion.  *See Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); (*See* Doc. #40, Amended Report of Scheduling Conference and Order).  Defendants are **NOTIFIED** that in the future, as the moving parties, they are required to provide such notice to pro se prisoner litigants.  *See* LR 56.2.

*California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003).  A factual dispute is

"material" if it might affect the outcome of the suit under governing law.

*Anderson*, 477 U.S. at 248.  The court must believe the nonmoving party's

evidence and must view inferences it draws from the underlying facts in the light

most favorable to the nonmoving party.  *See id.* at 255; *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Villiarimo v. Aloha Island Air,*

*Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment is appropriate when the nonmoving party "fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The nonmoving party cannot

avoid summary judgment by relying solely on conclusory allegations that are

unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

1989).  Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows

a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at

324; *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

This means that the nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (footnote omitted).

**B.      28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6)**

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.[4]  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if a plaintiff raises claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1-2).  Similarly, pursuant to Fed. R. Civ. P. 12(b)(6), the district court may dismiss a complaint for failure to state a claim upon which relief may be granted.

        The standard for determining whether a claim fails to state a claim is the same under § 1915A(b)(2) and Rule 12(b)(6).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to sufficiently allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937

---

        [4]Even if a motion to dismiss is brought, the court is not relieved of its duty to screen a prisoner's complaint "at any time."  *See Lopez v. Smith*, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000) (*en banc*)..

(2009) (dismissing civil rights complaint); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  In *Iqbal*, the Court clarified that, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth.  129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).  Such claims should not to be disregarded because they are "unrealistic or nonsensical," but because they are simply legal conclusions, even if they "are cast in the form of a factual allegation."  *Moss*, 572 F.3d at 969 (citing *Iqbal*, 129 S. Ct. at 1951).  On this basis, the *Iqbal* Court dismissed the plaintiff's conclusory allegation that former Attorney General Ashcroft and FBI Director Mueller knowingly and willfully subjected him to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest."  *Iqbal*, 129 S. Ct. at 1951.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  Even if a plaintiff's specific factual allegations may be consistent with a constitutional claim,

the court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 1951.

If a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez*, 203 F.3d at 127-29; *Moss*, 572 F.3d at 965. The court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford.* 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies).

## III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *West v. Atkins*, 487 U.S. 42, 48 (1988).

The gravamen of Coles's claims against QMC, its unknown emergency room employees, Dr. Ing, and Officer Hisatake, is that they

8

discriminated against him on the basis of his race and arrestee status, by denying

him emergency medical treatment, in violation of the Fourteenth Amendment.[5]

## A.   Equal Protection

The equal protection clause of the Fourteenth Amendment "is

essentially a direction that all persons similarly situated should be treated alike."

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Prisoners are protected from invidious discrimination based on their status in a

protected class.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (race);

*Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (religion).  Equal protection

claims are not limited to racial and religious discrimination, but other claims are

not subject to a strict scrutiny evaluation.  *See Lee v. City of Los Angeles*, 250 F.3d

668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to disabled plaintiff's equal

protection claim); *see also Tatum v. Pliler*, 2007 WL 1720165 (E.D. Cal. 2007)

(applying minimal scrutiny to equal protection claim with no allegation of

---

[5]Coles alleges these claims arise under the Fourth, Fifth, and Fourteenth
Amendments.  It is clear that Coles's excessive force claims arise under the Fourth
Amendment and his discrimination claims arise under the equal protection clause
of the Fourteenth Amendment.  Because Coles was under arrest when the incident
at issue occurred, the court also construes his allegations of Defendants'
"deliberate indifference" to his need for medical care as brought under the under
the due process clause of the Fourteenth Amendment, rather than under the Eighth
Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Gary H. v.
Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987).

race-based discrimination); *Hightower v. Schwarzenegger*, 2007 WL 732555 (E.D. Cal. March 19, 2008).

To state a viable claim under the equal protection clause a prisoner "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Byrd v. Maricopa County Sheriff's Dep't*, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)).

## B.    Denial of Medical Care

Because pretrial detainees' rights to medical care under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the Ninth Circuit applies the Eighth Amendment standard of review to a pretrial detainee's claims. This requires an allegation "of conduct that amounts to 'deliberate indifference' [which] provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons." *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). Thus, at a minimum, pretrial detainees must be provided

10

with medical care that is adequate under the Eighth Amendment.  Specifically, jail officials may not act with deliberate indifference to a pretrial detainee's serious medical needs.  *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).

## C.  Dismissals for Failure to State a Claim

A careful review of Coles's Complaint reveals that, under the stricter pleading standard recently set forth by the Supreme Court in *Ashcroft v. Iqbal*, *supra*, Coles fails to state a claim against the QMC, its unknown emergency room employees, Dr. Ing, and HPD Officer Hisatake (collectively, "Defendants").

### 1.  *QMC, Its Unknown Emergency Room Employees, and Dr. Ing*

In his Complaint, Coles alleges that QMC, its unknown emergency room medical personnel, and Dr. Ing (hereinafter "QMC Defendants"), as agents for the HPD, "refused to provide medical care in deliberate indifference to medical needs."  (Compl. at 2 & 2B.)  Coles alleges that this refusal was based on his race and his status as an HPD arrestee.

First, as discussed more fully, *infra*, private parties may be sued under § 1983 only if their conduct is "fairly attributable to the State" and there was an agreement between the state and the private party to deprive plaintiff's constitutional rights.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th

Cir. 1989) (citations omitted).  Thus, a plaintiff must allege sufficient facts to show

that the private person or corporation conspired with or wilfully participated in a

joint action with state officials to deprive the plaintiff of his constitutional rights.

*Degrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (citing *Dennis v.*

*Sparks*, 449 U.S. 24, 27-28 (1980)); *Taylor*, 880 F.2d at 1048.

      A conspiracy claim under § 1983, must allege facts with sufficient

particularity to show an agreement or a meeting of the minds to violate a plaintiff's

constitutional rights.  *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

Pleading a conspiracy requires more than a conclusory allegation that defendants

conspired to deprive a plaintiff of his civil rights.[6]  *See Harris v. Roderick*, 126

F.3d 1189, 1195 (9th Cir. 1997); *Buckey v. County of Los Angeles*, 968 F.2d 791,

794 (9th Cir. 1992); *see also Lee*, 250 at 679 n.6 (holding that plaintiffs must

allege facts which are "specific and concrete enough to enable the defendants to

--------

[6]Conspiracy claims are subject to this heightened pleading standard since
they require the plaintiff to show that the defendant agreed to join the conspiracy.
*See Harris*, 126 F.3d at 1195; *Margolis*, 140 F.3d at 853; *Mendocino Envt'l Ctr. v.*
*Mendocino County*, 14 F.3d 457, 459 (9th Cir. 1994) (applying identical standard
to conspiracy claim in *Bivens* action). Although the Ninth Circuit eliminated the
application of a heightened pleading standard to all cases where an improper
motive is an element, it did not modify the requirement in regard to allegations of
conspiracy.  *See Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.
2002).

prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.").

Coles simply and conclusorily alleges that the QMC Defendants were agents of the HPD.  The Complaint is devoid of facts to support this conclusory allegation.  To the contrary, the facts show that Officer Hisatake brought Coles to the QMC for treatment two times.  The first time, Dr. Ing refused to treat Coles, allegedly because Coles is black and was in custody.  (Compl. at 6.)  The second time, QMC's unknown emergency room employees refused to treat Coles, because he was in custody and had been allegedly injured by the police.  (*Id.* 6B.)  Coles does not allege that Officer Hisatake directed or coerced anyone at QMC to refuse to treat Coles, or in other words, to conspire with Hisatake to deprive Coles of treatment.  While Coles alleges that Ing "*attempted* to have Off. Hisatake force Coles to sign refusal of treatment papers," this does not support a claim that Hisatake, as the state actor, conspired with Ing to refuse Coles treatment.  (Compl. at 6.)  Rather, the facts allege that Ing independently refused to treat Coles as soon as Ing realized Coles was black and in custody.  This alleged decision came well before Ing allegedly attempted to enlist Hisatake's support.  Therefore, Ing's decision not to treat Coles cannot be "fairly attributable" to Hisatake or HPD, because a "state is not responsible for decisions that 'ultimately turn on medical

13

judgments made by private parties according to professional standards not established by the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982).  The Complaint contains no allegation supporting a conspiracy between HPD and the QMC Defendants to refuse medical care to HPD arrestees, on the basis of race or otherwise.  There are no facts tending to show that the QMC Defendants acted in concert with HPD, or that their allegedly discriminatory conduct is fairly attributable to HPD, and thus, to the State.  Because the Complaint does not properly allege that the QMC Defendants acted under color of state law, Coles fails to state a claim against the them under § 1983 for violation of his equal protection rights.

Second, even accepting that QMC was acting under color of state law without any supporting facts, to be liable under § 1983, a defendant must personally participate in the alleged deprivation of rights; there is no respondeat superior liability under § 1983.  *Bell v. Clackamas County*, 341 F.3d 858, 867 (9th Cir. 2003); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Courts to consider the question of corporate liability under § 1983, have concluded that the principles of liability articulated in *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), apply to private corporations acting under color of law.  *See Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003); *Gibson v. County of Washoe*, 290 F.3d

14

1175, 1185 (9th Cir. 2002).  In other words, to state a claim against a "state actor"

corporation requires an allegation that "a deliberate policy, custom, or practice . . .

was the 'moving force' behind the constitutional violation . . . suffered." *Galen v.*

*County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *City of Canton, Ohio, v.*

*Harris*, 489 U.S. 378, 385  (1989).

   Alternatively, and more difficult to prove, municipal liability may be

imposed when the "state actor" corporation's omission led to the constitutional

violation by its employee.  *Gibson* at 1186.  Under this route, the "plaintiff must

show that the [corporation]'s deliberate indifference led to its omission and that the

omission caused the employee to commit the constitutional violation."  *Id.*

Deliberate indifference requires a showing "that the [corporation] was on actual or

constructive notice that its omissions would likely result in a constitutional

violation."  *Id.*

   Here, Coles fails to allege that QMC knew of, participated in, or

directed its employees, known and unknown, to refuse to treat Coles, based on his

race, arrestee status, or any other factor.  Nor does Coles allege, much less

plausibly show, that QMC had a policy, practice, or custom, of refusing to treat

HPD's arrestees on the basis of race, or for any other reason.  Nor does Coles

identify any QMC "omission," reached in deliberate indifference, that caused any

QMC employee or sub-contractor to refuse to treat Coles.  Coles simply states that QMC acted as an agent of the HPD when it refused to provide Coles with emergency medical care.  (*See* Compl. at 2B, 6-7.)  This is not an allegation of fact, it is a legal conclusion that is insufficient to state a claim.  *See Twombly*, 127 S. Ct. at 1964-65.  Accordingly, Coles has not stated a claim under § 1983 against the QMC with respect to the denial of medical treatment.

Third, construing Coles's pro se Complaint liberally, *see Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), it fails to allege facts susceptible to an inference that the QMC Defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), and demonstrating that others similarly situated were not discriminated against in the same manner.  *See City of Cleburne*, 473 U.S. at 439.

Coles says that when Dr. Ing saw that he was black and in custody, Ing immediately refused to treat him.  Coles states that when  he returned to the QMC, its emergency room staff "gave no reason for their refusal to treat Coles other than the fact that he was in custody and had received his injuries while being arrested by the police officers."  (Compl. at 6A.)  Coles then concludes that, because he was black and in custody, the QMC Defendants refused to treat him.

16

The Complaint fails to allege, however, that other similarly situated people, i.e.,

other persons with injuries similar to Coles, or possibly, other non-black HPD

arrestees, were routinely treated by the QMC Defendants, while he was not.  Under

*Iqbal*, these types of legal conclusions, without more, are not entitled to an

assumption of truth, even if they are cast as factual allegations.  *Iqbal*, 129 S. Ct. at

1951; *Moss*, 2009 WL 2052985 *5.

As such, Coles's allegations against QMC, its emergency room

employees, and Dr. Ing are insufficient to state a discrimination claim in violation

of the Fourteenth Amendment under 42 U.S.C. § 1983.  Because the court also

finds that summary judgment is appropriate for the claims alleged against the QMC

Defendants, it  does not grant leave to amend these claims.

   2.   *Officer Hisatake*

Liberally construing Coles's claims against Officer Hisatake, and

accepting as true all the facts as they relate to Hisatake's involvement in Coles's

arrest and two transports to the hospital, the court cannot discern what

constitutional violation Hisatake allegedly committed.  Coles alleges that Hisatake:

(1) arrived after Officers Eagle and Robertson allegedly assaulted Coles; (2) saw

that Coles was injured and immediately took him to QMC; (3) waited at QMC for

1½ hours until Dr. Ing allegedly refused to treat Coles; (4) took Coles to HPD

Headquarters for further instructions; (5) took Coles back to QMC when told to do so by his superior officer; and (6) returned Coles to HPD Headquarters when QMC employees again allegedly refused to treat Coles.  There are simply no factual allegations supporting any constitutional violation in these claims.

First, Coles does not allege that Hisatake was involved in the arrest and alleged use of excessive force, so there is no statement of a claim against Hisatake on that count.

Second, Coles alleges no facts supporting a discrimination claim against Hisatake.  Hisatake obviously knew that Coles was black, but nonetheless, twice sought medical treatment for Coles.  Nor is there any allegation, plausible or otherwise, that Hisatake would have treated other similarly situated arrestees differently than the treated Coles.  Thus, Hisatake cannot be liable for a violation of Coles's equal protection rights.

Third, Coles states that Hisatake promptly took Coles to the QMC and waited there for 1½ hours with Coles.  Coles does not claim that Hisatake personally interfered in any way with the provision (or lack) of treatment for Coles. In fact, Coles admits that Hisatake attempted to secure treatment for Coles twice at QMC.  Hisatake, as a police officer, cannot be expected to provide medical treatment for Coles on his own.  There are simply no facts suggesting that Hisatake

18

was deliberately indifferent to Coles's allegedly serious medical needs, so he cannot be liable for a delay or denial of medical treatment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed.")

As such, Coles fails to state a claim against Officer Hisatake for deliberate indifference to his serious medical needs or for a deprivation of equal protection.  Coles's claims against Hisatake are DISMISSED with leave granted to amend.

**D.    Summary Judgment**

QMC and its unknown emergency room personnel move for summary judgment and Dr. Ing substantively joins the Motion.  QMC provides the uncontested affidavits of Cynthia Kamikawa, QMC's Vice-President and Chief Nursing Officer,[7] and Kathleen M. Rink, QMC's Director or Admitting, Business Services and Medical Records.  (*See* QMC's Concise Statements of Material Facts in Support of Motion and Reply, Docs. #30, #51.)  Coles opposes the Motion.

---

[7]Kamikawa oversees QMC's nursing administrative services and is responsible for the business and operational management of the QMC Emergency Department.  (Kamikawa aff. ¶ 2.)

1.      *The QMC Defendants' Arguments*

The QMC Defendants argue that they were not acting under color of state law on April 24, 2007, or at any other relevant time.  QMC Defendants therefore argue that state action cannot be imputed to them under the four tests set forth in *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  In support, Kamikawa states that QMC is a private, non-profit corporation that is not now, and has never been, under contract with HPD, the City and County of Honolulu, or the State of Hawaii to provide treatment of pretrial detainees or others under HPD custody.  (Kamikawa aff. ¶¶ 3 & 4.)  Kamikawa avers that all of the nursing staff on duty at the QMC Emergency Department on April 24, 2007, the date that the incidents allegedly occurred, were QMC employees.  (*Id.* ¶ 5.)

Rink, QMC's billing officer, states that if individuals in HPD custody have insurance, QMC bills their private insurance company for treatment received at the QMC Emergency Department.  (Rink aff. ¶ 3.)  If those individuals do not have private insurance, QMC attempts to assist them in obtaining Medicaid or QUEST coverage, to pay for services.  (*Id.*)  Rink asserts that this billing procedure was in place at all relevant times, including April 24, 2007.  (*Id.*)

Dr. Ing states that he is a private physician employed by The Emergency Group, an agency that provides emergency medical services to the

QMC.  (*See* Doc. #48, Ing's Concise Statement of Material Facts, Ing aff. ¶ 2.)  Ing

states that neither he nor The Emergency Group are under contract with the City

and County of Honolulu, HPD, or the State of Hawaii, to provide medical care to

pretrial detainees or other persons in HPD custody.  (*Id.* ¶ 3.)  Ing further asserts

that he did not deny medical care to Coles on April 24, 2007, or on any other day,

nor was there any direction from, or informal agreement between himself and the

City and County of Honolulu, or HPD to deny health care to Coles anyone else, at

any time.  (*Id.* ¶¶ 4, 5.)

### 2.     *Coles's Opposition*

Coles opposes the Motion, arguing that, simply because HPD and

QMC do not have a contractual relationship, that does not foreclose a finding that

QMC acted under color of state law. [8]  Coles further argues that Kamikawa's

---

[8]Coles is correct that this factor is not dispositive on whether a hospital is acting under color of state law.  *See Sykes*, 412 F. Supp. 2d at 202; *Conner v. Donnelly*, 42 F.3d 220, 226 (4th Cir. 1994) ("A private physician who treats a prisoner upon referral by the state, and who knows that the patient is a prisoner, voluntarily assumes the state's obligation to provide medical care to inmates.").  Because no other factors support a finding of state action, however, *see infra*, the absence of a contract between the QMC Defendants and HPD lends weight to the conclusion that the QMC Defendants were not acting under color of state law.  *See Jensen v. Lane County*, 222 F.3d 570, 575-76 (9th Cir. 2000) (holding that a private doctor who *was* under contract with the county to provide mental health treatment to police detainees *and* satisfied the joint action/nexus test acted under color of state law, noting that the contract alone might be insufficient).

affidavit only addresses unnamed nursing staff on duty at the QMC Emergency

Department on April 24, 2007, and thus, does not account for other unknown

emergency room personnel present that night, who may have denied him care.

Coles says that because QMC fails to cite to any case that is factually on point with

his case, his suit must be allowed to proceed to trial.  Finally, Coles argues that

under the "joint action" and "governmental nexus" tests, the QMC Defendants

were acting under color of state law.[9]  *See Kirtley*, 326 F.3d at 1092.

### 3.     *The QMC Defendants Were Not Acting Under Color of State Law*

When determining whether a private party acted under color of law, a

court starts with the presumption that private conduct *does not* constitute state

action.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.

1999).  Action by private entities may be state action, however, if there is

significant state involvement.  *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir.

1983).  A private party may be sued under § 1983 only if the conduct of the private

party is "fairly attributable to the State" and there was an agreement between the

state and the private party to deprive plaintiff's constitutional rights.  *Lugar*, 457

---

[9]Coles also argues that, as a pro se litigant, the court should liberally
construe his allegations, and asks to amend his Complaint to explicitly assert that
Defendants were "acting under color of state law," rather than as HPD agents.
Amendment is unnecessary on this basis, as the court construes the Complaint as
alleging that Defendants acted under color of state law.

U.S. at 936-37; *Kirtley*, 326 F.3d at 1092 (citing *Sutton*, 192 F.3d at 835 (citation omitted)).  However, "[c]onstitutional standards should be invoked only 'when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'"  *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (quotations omitted)).

The Supreme Court has established four tests or factors to determine whether state action exists: (1) public function, (2) state compulsion or coercion, (3) governmental nexus, and (4) joint action.  *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) (citing *Lugar*, 457 U.S. at 939); *see also Kirtley*, 326 F.3d at 1092.  "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists."  *Kirtley*, 326 F.3d at 1092.

### a.  No Public Function

"To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental."  *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)); *Stanley v. Goodwin*, 475 F. Supp. 2d 1026, 1039 (D. Haw. 2006).  The provision of emergency room medical treatment is not a traditional and exclusive function of government.  *See Sykes v. McPhillips*, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006)

23

(holding that a private hospital that provided emergency care for a state prisoner once, is not a state actor subject to § 1983 liability); *see also McIlwain v. Prince William Hosp.*, 774 F. Supp. 986, 989-90 (W.D. Va. 1991); *Morse v. City of New York*, No. 00-CV-2528, 2001WL 968996, *8 (S.D.N.Y. Aug. 24, 2001) ("The fact that [plaintiff] was brought to the hospital from police custody and was released from the hospital into police custody is insufficient to transform this private hospital and its staff into state actors for section 1983 purposes."). The QMC Defendants were not acting under color of state law pursuant to the public function test, and Coles does not contest this.

b.    *No Joint Action*

To satisfy the joint action test, a plaintiff must show that "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1092 (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)). The simple acquiescence of a state official in the actions of a private party is not sufficient to show joint action. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978). Instead, "a private

24

defendant must share with the public entity the goal of violating a plaintiff's constitutional rights."  *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

Although Coles argues that HPD was "dependent" on the QMC Defendants to provide medical care to people in HPD custody, he provides no competent evidence showing that HPD, or the City and County of Honolulu has "insinuated itself into a position of interdependence with" the QMC Defendants sufficient to show joint action in their allegedly unconstitutional behavior.  Even if QMC had a policy or practice of refusing to treat black HPD arrestees , *and Coles does not allege this*, Coles does not show: (1) what benefit HPD or the City and County of Honolulu derive from such a policy; or (2) that HPD Officer Hisatake did anything more than acquiesce to the QMC Defendants' refusal to treat Coles. Assuming that the refusal to treat Coles was a one-time act of discrimination, Coles still does not define what benefit accrued to the state from this alleged act, or show more than state acquiescence in the act, or show how any QMC Defendant shared a goal of discriminating against Coles with Hisatake or any other state or City of Honolulu official.  As such, there is no joint action between QMC, its employees, Dr. Ing, and HPD.

c.      *No State Compulsion*

The governmental compulsion test considers whether the coercive influence or 'significant encouragement' of the State effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094.  Coles makes no allegations that HPD or the City and County of Honolulu coerced or compelled QMC, its employees, or Dr. Ing to develop, implement, or pursue a policy to refusing to treat HPD arrestees on the basis of race or otherwise.  Nor does Coles provide anything showing that Hisatake or HPD encouraged the QMC Defendants to refuse Coles treatment.  The facts not only clearly suggest otherwise, but Coles concedes that this test is inapposite to his claims.  There was no state coercion or compulsion underlying the QMC Defendants' alleged refusal to treat Coles.

d.      *No Governmental Nexus*

"The nexus test asks whether 'there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'"  *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood*, 531 U.S. at 295).  "The State must be significantly involved in or actively participate in the alleged conduct" to satisfy the nexus test.  *L.T. ex rel. Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 761 (S.D. Miss. 2000) (finding insufficient nexus between the State and an off-duty police officer, who, while privately

employed as a security guard, allegedly committed a sexual assault).  This inquiry

is fact specific and should be done on a case-by-case basis.  *Chapman v. Higbee*

*Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (citing *Burton v. Wilmington Parking Auth.*,

365 U.S. 715 (1961)).

Coles argues that there is a nexus between HPD and the QMC

Defendants, because QMC has an arrangement, if not a contract, to provide care to

those in HPD custody, and HPD reimburses QMC for this care.  Coles provides no

competent evidence of this arrangement, other than his own supposition, that this is

true.  First, Rink, QMC's supervising billing officer, states that this is not true.

(Rink aff. ¶ 3).  Although QMC admits that they provide care for individuals in

HPD custody, QMC looks to the individual's personal insurance for payment, and

if there is no private insurance, attempts to assist the individual in obtaining

Medicaid or QUEST coverage.  (*Id.*)

Second, even if QMC was paid directly by the HPD, which is not true,

or receives other state and federal funding, this is not sufficient to show a

governmental nexus.  *See Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (finding no

governmental nexus, despite nursing home's almost complete public-financing,

and noting that the State paid the medical expenses of more than ninety percent of

the patients); *Taylor v. St. Vincent's Hosp.*, 523 F.2d 75, 77 (9th Cir. 1975)

(holding that neither state tax exemptions, or receipt of Hill-Burton funds transform a private hospital into a state actor).  Coles does not allege or provide evidence that Hisatake, HPD, or the City and County of Honolulu participated in the decision to refuse Coles treatment, nor was the refusal of treatment made pursuant to any HPD (or state) regulation or policy.  Thus, there is no nexus between HPD, the City and County of Honolulu, or the State and the QMC Defendants' challenged decision to refuse to treat Coles.  *See Rendell-Baker,* 457 U.S. at  840-43 (no state action where school, which was heavily regulated by the State and received funding from it, and fired teachers).

The Ninth Circuit has consistently dismissed private hospitals and doctors in § 1983 claims for failing to come within the color of state law.  *See Sutton*, 192 F.3d at 836-43 (holding that private hospital did not act under color of federal law in *Bivens* action*); Briley v. State of Cal.*, 564 F.2d 849, 855-56 (9th Cir. 1977) (private hospitals do not act under color of law unless the state is significantly involved in the private party's activities); *Watkins v. Mercy Med. Center*, 520 F.2d 894, 896 (9th Cir. 1975) (private doctors normally do not come within the color of state law); *Skylstad v. Reynolds*, NO. 05-35674, unpub., 248 Fed. Appx. 808 (9th Cir. Sep. 20, 2007).

28

Most other circuit courts to consider the question agree. *See Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995); *Rockwell v. Cape Cod Hospital*, 26 F.3d 254 (1st Cir. 1994); *Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989), *cert. denied*, 494 U.S. 1016 (1990) (all holding that private doctors or hospitals were not acting under color of state law, despite state statutory schemes regulating them).

There is no genuine issue of material fact that QMC, its unknown emergency room employees, or Dr. Ing, were not acting under color of state law so as to impose liability against them under § 1983. Moreover, the court rejects Coles's argument that there may have been other unnamed emergency room personnel who were not QMC nurses, who also allegedly denied him medical care, and his claims against those unnamed defendants survives. It is clear that no one at the Queen's Medical Center was acting under of color of state law when Coles was allegedly refused treatment. Accordingly, the QMC Defendants' Motion for Summary Judgment is GRANTED.

**E.     Coles's Motion to Join Party is Denied**

The court's analysis applies with equal force to The Emergency Group. As such, it would be futile to allow amendment of the Complaint to name The Emergency Group as a Defendant. Coles's Motion to Join Party is DENIED.

29

## IV.  <u>CONCLUSION</u>

1.  Coles fails to state a claim against the Queens Medical Center, its unknown emergency room employees, and Dr. Ing and their Motion to Dismiss is GRANTED.

2.  There is no genuine issue of material fact showing that the Queens Medical Center, its unknown emergency room employees, or Dr. Ing were acting under color of state law, and their Motion, in the Alternative, for Summary Judgment, is GRANTED.  The Queens Medical Center, its unknown emergency room employees, and Dr. Ing are DISMISSED with prejudice.

3.  Coles's claims against Defendant Michael Hisatake fail to state a claim and are DISMISSED pursuant to 28 U.S.C. § 1915A(a-b).  Coles is granted **thirty days (30)** leave to amend his Complaint if possible, as calculated from the date of this order, to cure the deficiencies in this claim as enumerated above.

If Coles chooses to amend his Complaint he is NOTIFIED that the Amended Complaint must be complete in itself without reference to the superseded pleading, or original Complaint.  *See* Local Rules of the District of Hawaii, LR 10.3.  That is, Coles must reallege those claims and defendants that have not been dismissed by this order, and cure the deficiencies with his claims against Hisatake.

Defendants not named and any claims not re-alleged in the Amended Complaint will be deemed waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

4. If the Amended Complaint fails to state a claim against Officer Hisatake, upon which relief may be granted, those claims will be dismissed without further leave to amend.  If Plaintiff elects to stand on his current Complaint, and does not amend his claims against Officer Hisatake, he should notify the court of this decision, and his claims against Officer Hisatake will be TERMINATED.

6. The Clerk of Court is directed to mail a form § 1983 Complaint to Plaintiff.

7.  Coles's Motion to Join Party is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 27, 2009.



_____
David Alan Ezra
United States District Judge

*Coles v. Eagle, et al.*, Civ. No. 09-00167 DAE; ORDER GRANTING MOTION TO DISMISS, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT AND DENYING MOTION TO JOIN PARTY; pro se attys/Ords/dmp/2009/Coles, 09-167 (grt QMC m dsm & msj)