IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HARRY J. COLES, #A1075332, | ) | CIV. NO. 09-00167 DAE-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| JOSHUA EAGLE, ELTON | ) | |
| ROBERTSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants Joshua Eagle and Elton Robertson (collectively, Defendants) move for summary judgment. (Doc. 83.) Plaintiff Harry J. Coles, a prisoner proceeding *pro se*, alleges that Eagle and Robertson used excessive force during his arrest on April 24, 2007.[1] Defendants argue that they are entitled to qualified immunity. The Motion is brought pursuant to Federal Rule of Civil Procedure 56. After careful consideration of the entire record herein, the court finds that Defendants are not entitled to qualified immunity, and DENIES the Motion for Summary Judgment.

_____

[1] Although Defendants argue against a state law claim for false arrest, Coles concedes that he is not asserting a state law claim for false arrest nor seeking supplemental jurisdiction for such a claim. The court therefore does not address this argument.

# I. **SUMMARY OF FACTS**

On April 24, 2007, at approximately 2:48 a.m., Coles was driving a silver Nissan on Kapiolani Boulevard, in Honolulu.  Eagle, who was then a Police Officer with the Honolulu Police Department ("HPD"), noticed Coles weaving between lanes several times and then slow to approximately two miles per hour. Eagle searched the Nissan's license plate number in his patrol car's mobile data computer ("MDC"), which revealed that the Nissan had been reported stolen. Eagle verified this with HPD Dispatch, then activated his emergency lights, indicating that Coles should pull over.

Rather than pull immediately to the side of the road, Coles entered a nearby parking lot and drove to its far corner where there was an exit onto Makaloa Street.  The exit was blocked by concrete barriers, however, and Coles stopped the car behind them.  Eagle parked his patrol car in back of Coles's car to prevent Coles from backing up.  Eagle ordered Coles to keep his hands in sight and to get out of the car several times.  When Coles did not comply, Eagle tried to open the door and discovered that it would not open.

Coles says that he was concerned for his safety during this late-night traffic stop because he is African-American.  Coles claims that he put his hands on the steering wheel to allow Eagle to clearly see them, and kept them their

throughout the ensuing altercation.  Defendants dispute this, stating that Coles

made furtive, reaching motions near the left side of the driver's seat numerous

times.  At the October 25 hearing on this motion, Coles conceded that he did in fact

move his hand from the steering wheel to the driver's side door area several times.

Robertson arrived at the parking lot to assist Eagle in what he believed

was a high risk traffic stop involving a stolen car.  When he arrived, Robertson saw

Eagle standing outside of Coles's car repeatedly ordering Coles to keep his hands

visible and get out of the car.  Robertson says that he also told Coles to keep his

hands visible, and that Coles initially complied, but later removed his left hand

from the steering wheel and appeared to be searching under the driver's seat.

Robertson then drew his gun.  All parties agree that Coles said several times that

the car door would not open.

Eagle then broke the driver-side window with his baton and

Defendants began pulling Coles through the window.  Defendants claim that Coles

vigorously resisted, hooking his leg around the steering wheel column, shouting

obscenities, and keeping his left hand out of sight.  Defendants ordered Coles to

stop resisting and get out of the car.  Defendants noticed a strong odor of alcohol

on Coles's breath and coming from the car during this altercation.  Eagle saw a

bottle that appeared to be 1/4 full of clear liquid between Coles's legs.  This bottle was recovered and determined to contain alcohol.

After Eagle broke the window, Coles claims that Eagle beat him about the face, head, and neck, eventually pulling Coles from the car by his clothes and hair.  Eagle admits that he struck Coles's upper torso with his knee twice, but asserts that he did so only to force Coles to release the steering column.

Coles claims that, once he was out of the car, Defendants threw him on the ground and  "repeatedly kicked [him] in the ribs, body, face and head." (Comp., Doc. 1 at 8.)  Coles asserts that Eagle continued to beat him with the baton, while "Robertson fell on [him] with his knee, in the middle of his back, and remained there while Off. Eagle struck [him] in the head with his baton and then handcuffed him.  Prior to being handcuffed, the officers tore off his blood spattered shirt and pants and left him in his underw[ea]r."  (*Id.*)

Eagle and Robertson deny they beat Coles.  Defendants claim they used only the amount of force necessary to "place[ Coles] on the ground next to the vehicle . . . and to place Coles' hands behind his back" so they could handcuff him. (Doc. 84-2 at ¶ 12, Robertson Dec.)  Coles does not allege that either officer continued to beat him once he was handcuffed.

4

After Coles was out of the car and handcuffed, Robertson checked the driver-side door and determined that it was working properly, including the door locks and alarm system.  At approximately 2:52 a.m, four minutes after Eagle first noticed Coles, Eagle arrested Coles for the unauthorized control of a propelled vehicle, driving without a license, possessing an open container of alcohol in the car, and on an outstanding criminal contempt warrant.[2]

The owner of the car was summoned to the parking lot, where he identified his car and stated that he did not know Coles and had not given him permission to use the car.  Coles complained of facial pain and was taken twice to The Queen's Medical Center (QMC) by Officer Michael Hisatake.  In his Complaint, Coles alleged that QMC emergency room personnel refused to treat him because he was African-American and in police custody.[3]  Although neither party submitted QMC's records regarding Coles' two visits to the emergency room on April 24, 2007, Eagle's incident report, which was completed four hours after

---

[2] Coles was convicted of Unauthorized Control of Propelled Vehicle, in violation of Hawaii Revised Statutes (HRS) § 708-836 (Supp. 2008), and Possessing Intoxicating Liquor While Operating Motor Vehicle, in violation of HRS § 291-3.1(b) (2007 Repl.).  *See State v. Coles*, 120 Haw. 417, 209 P.3d 194, unpub. 2009 WL 1280604 (Haw. App. May 11, 2009).

[3] The court dismissed Coles's claims against Hisatake, QMC, and Dr. Matthew Ng on August 27, 2009.  (*See* Doc. 61, Order Granting Motion to Dismiss, or, Alternatively for Summary Judgment.)

Coles's arrest, states that QMC personnel refused to treat Coles because he "was too disorderly to treat."[4]  (Doc. 127-5 at 2, Pl. Separate & Concise Statement.)

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate if the papers show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A "genuine issue" exists if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003).  A factual dispute is "material" if it might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.  The court must believe the nonmoving party's evidence and must view inferences it draws from the underlying facts in the light most favorable to the nonmoving party.  *See id.* at 255; *Matsushita Elec. Indus. Co., Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

---

[4] Coles submits his prison medical records, dated from September 2008 until June 2010, to support his injury claims.  They do not reference treatment Coles received (or refused) immediately after his arrest or during the following year and a half.  (*See* Doc. 120, Pl. Exhs.)

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be entered. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324; *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). Thus, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (footnote omitted).

## B.    **Qualified Immunity**

"Qualified immunity entitles [police officers] not to stand trial or face the other burdens of litigation' on [a constitutional] claim, provided their conduct did not violate a clearly established federal right." *Brooks v. City of Seattle*, 599 F.3d 1018, 1022 (9th Cir. 2010) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The court asks two questions when analyzing whether qualified immunity

applies: (1) was there a violation of a constitutional right, and (2) was the right at issue "clearly established" such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation?  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *as modified by Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 818 (2009) (allowing courts the discretion to decide which step to consider first).  If the officers' actions do not amount to a constitutional violation, or the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).

Any genuine issues of material fact concerning the underlying facts of what the officer knew or what the officer did are questions of fact for the jury. *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996), *citing Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  When the essential facts are undisputed, however, the reasonableness of the officer's actions is properly determined by the court.  *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099; *see also Henrich*, 39 F.3d at 915.

## III.  <u>DISCUSSION</u>

Coles alleges that Defendants' actions constitute excessive force in violation of the U.S. Constitution.  Defendants argue that under the circumstances

present at the time of the arrest, their use of force was reasonable.

A.   **Excessive Force Standard**

An excessive force claim arising in the context of a traffic stop and arrest is "most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determining whether the police used excessive force during a traffic stop therefore "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). Since reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These factors should be considered in relation to the amount of force used. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Reasonableness is judged from the perspective of a reasonable officer on the scene, allowing for the split-second judgments officers are required to make in "tense, uncertain, and rapidly-evolving" situations. *Graham*, 490 U.S. at 396-97.

The right to employ "some degree of physical coercion or threat thereof" to effect an arrest accompanies the right to make the arrest or investigatory stop, *id.* at 396, but the force must be necessary to be reasonable, *Blankenhorn*, 485 F.3d at 480.  When police have control over a suspect, the use of more force to bring the suspect under control may be unreasonable.  *See Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (holding that the use of pepper spray on protesters already under police control was excessive).  Police officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct.  *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  To determine whether force was reasonable requires consideration of the totality of the circumstances, *Forrester v. City of San Diego*, 25 F.3d 804, 806 n.2 (9th Cir. 1994), including whether a warning was given, *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. 2001), and the availability of alternative methods of capturing and subduing a suspect, *Smith*, 394 F.3d at 701-02.  The fact that a suspect does not threaten the officer does not shield him from the use of force.  *See Forrester*, 25 F.3d at 807-09 (finding no Fourth Amendment violation when officers used injury-causing pain compliance techniques on passively resisting demonstrators).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Reviewing the evidence in the light most favorable to Coles, if it supports a finding of excessive force, then  Defendants are not entitled to summary judgment.

## B.   Amount of Force Used

The court must "first assess the quantum of force used and then measure the governmental interests at stake by evaluating a range of factors." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (internal citations and quotation marks omitted).  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.  Pushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." *Graham*, 490 U.S. at 395.

The undisputed facts show that Defendants pulled Coles out of a broken car window after he refused to open the door and exit the car, all the while asserting that the car door would not open.  Eagle admits that he kneed Coles twice during this removal, to distract and force Coles to release his hold on the steering column.  Defendants wrestled Coles to the ground and restrained him facedown

11

while they applied handcuffs.  Coles claims that during this struggle his shirt and pants were torn off, both Defendants hit and kicked him, and Robertson fell on Coles's back while attempting to apply the handcuffs.  Once the handcuffs were in place, however, Coles does not allege that Defendants exerted further force.

There is no dispute that HPD took Coles to the hospital twice, but he received no treatment either time.  Defendants say Coles refused treatment, but as noted above, Eagle's police report states that medical personnel refused to treat Coles because he was too disruptive.  (Doc. 127-5 at 2.)  Coles alleges that the hospital refused to treat him because he is African-American and was in police custody.  Neither party, however, submitted the hospital reports of Coles's two visits to the emergency room on April 24, 2007, which might have clarified this issue.

Coles claims that he

received extensive injuries to his face, head, hands, arms and body due to the assault.  He has lost several teeth, has recurring migraine headaches and has lost full use of his neck and left hand.  His left arm and three fingers on his left hand are numb and he has been told that he has extensive nerve damage due to a spinal injury.  Furthermore, he has continued to relive the experience by having recurring nightmares. As a result, he has had to seek professional help and is currently taking medication to deal with the emotional stress of the incident.

(Compl. Doc. 1 at 7; Opp'n. Doc. 116-5 at 5.)   In his Concise Statement of Facts, filed more than two and a half years after the Complaint, Coles also alleges that his wrist was broken.

Coles submits: (1) an  HPD incident report prepared three hours after the incident, stating that Coles had a bloody nose and had "refused treatment." (Doc. 116-3 at 4, Pl.'s Opp'n., Exs.); (2) his prison health reports, dated September 2008 until June 2010, showing that he is being treated for Post Traumatic Stress Disorder  (*See* Doc. 119.); and (3) an emergency room report from the Casa Grande Regional Medical Center, dated August 27, 2009, showing that Coles had pain and tingling in his right hand, arm, neck and shoulder, although it does not indicate the cause for this pain or the visit to the emergency room.  (*See* Doc. 116-5 at 2, Pl. Opp'n.)  These documents, without more, are not dispositive of what Coles's physical injuries were on the date he was arrested.

Accepting Coles's non-conclusory statements as true and resolving all differences in his favor, this court finds that the amount of force used to pull Coles from the car and used against thereafter, while less than deadly, was significant and certainly more than a minimal use of force.  *See Brooks*, 599 F.3d at 1028-29.

C.      **The Graham Factors**

Whether Defendants' use of force was reasonable under the Fourth

Amendment in light of the other circumstances surrounding the arrest is the next

inquiry. *See Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (weighing

the gravity of the Fourth Amendment intrusion against the governmental interest to

determine whether the force used was constitutionally reasonable).

1.      *The Severity of the Crime*

Eagle initially noticed Coles because Coles was  weaving in and out

of lanes and was driving extremely slowly.  (Eagle Decl.)  Coles explains his

somewhat erratic driving by stating that "Kapiolani Blvd. and Ke[e]amoku Street is

a historic and notorious area of nightclubs and night-life activities."  (Pl. Opp'n. at

1.)   Eagle checked the Nissan's license plate number on his MDC, learning that

the car been reported stolen.  (Eagle Decl. ¶ 5.)  Eagle verified this

with HPD dispatch, and thereafter indicated that Coles should pull over.

Coles claims that Eagle's statement is unverifiable, unsubstantiated

hearsay because MDC reports are unrecorded.  Coles argues that it is implausible

that Eagle had time to call HPD dispatch to verify the MDC report *before* he pulled

Coles over, and alleges that Eagle received confirmation that the car was stolen

only *after* he had arrested Coles, suggesting that Eagle did not know that a serious

14

crime was being committed when he pulled Coles over.  In support of this theory,

Coles initially submitted only the second page of an HPD Incident Recall sheet

pertaining to Coles's arrest on April 24, 2007, showing dispatch calls from 3:03

a.m. to 4:02 a.m., eleven minutes after Coles was arrested.  (Pl. Opp'n, Doc. 116-3,

p. 2.)  One notation, entered at 3:07 a.m., states: "**** NJN343 2004 NISS 2DR

SIL / HPO7160498 / SC: 1651 ALA MOANA BLVD."  *Id.*  This cryptic note

refers to the car that Coles was driving, which was reported stolen from 1651 Ala

Moana Boulevard.

   *After* the hearing, however, Coles submitted the first page of the

Incident report, which shows that Eagle requested HPD Dispatch to check the car's

license number at 2:49 a.m., immediately after noticing Coles and presumably after

he had checked the MDC.  This undercuts Coles's contention that Eagle was

unaware that the vehicle was stolen when he initiated the traffic stop.  Nor does

Coles explain why Robertson believed that he was proceeding to a high risk traffic

stop, for a "stolen vehicle type of case," if Eagle had not already reported that he

was stopping an individual in a suspected stolen car.  (Doc. 84-3, Robertson Decl.

¶ 3.)

   Coles's bare assertions about what Eagle knew when he pulled him

over, or how the MDC works, or whether an MDC has recordable data that is now

or ever was available,[5] or how long it takes an officer to verify the MDC's

information are not supported by supported facts or even a showing that Coles is

qualified to provide such "evidence."   Instead, Coles claims these facts as true in a

vacuum, without swearing to or even signing his claims under penalty of perjury,

in an attempt to present a disputed issue of material fact.

> "Conclusory [summary judgment] affidavits that do not affirmatively

show personal knowledge of specific facts are insufficient."  *Casey v. Lewis*, 4

F.3d 1516, 1527 (9th Cir. 1993); *see also Shakur v. Schriro*, 514 F.3d 878, 890

(9th Cir. 2008); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When

the nonmoving party relies only on its own affidavits to oppose summary

judgment, it cannot rely on conclusory allegations unsupported by factual data to

create an issue of material fact.").  Even expert opinions require a factual basis for

any opinion offered in an affidavit.  *See Walton v. U.S. Marshals Serv.*, 492 F.3d

998, 1008 (9th Cir. 2007).  Coles's unsupported, unsigned, and unsworn argument

falls far short of a fact refuting Eagle's statement that he knew the car had been

reported stolen when he initiated the traffic stop.  *See U.S. ex rel. Woodruff v.*

*Hawaii Pacific Health*,  560 F. Supp. 2d 988, 1001 (D. Haw. 2008).

---

[5] Coles also provides Robertson's incident report, completed at 6:45 a.m. on the day of the arrest, which suggests that there is or was a record of Eagle's MDC check on the Nissan.   (*See* Doc. 116-4, Pl.'s Concise Statement of Facts and Opp'n.) (referring to Officer EAGLE's follow up . . . and attached MDC 192A).

16

Eagle thus had probable cause to believe that Coles was committing a felony when he pulled Coles over: the unauthorized control of a propelled vehicle. *See* HRS § 708-836 (defined as a class C felony).   "[T]he government has an undeniable legitimate interest in apprehending criminal suspects, and that interest is even stronger when the criminal is . . . suspected of a felony, which is by definition a crime deemed serious by the state.  This factor strongly favors the government."  *Miller*, 340 F.3d at 964.  This *Graham* factor weighs in favor of Defendants.

### 2. *Whether Coles Posed an Immediate Threat to the Safety of Defendants or Others*

The threat posed is the most significant *Graham* factor to consider. *See Brooks*, 599 F.3d at 1028.  Accepting Coles's version of the facts as true, and drawing all reasonable inferences in his favor, Coles was not overtly aggressive. This does not mean that Defendants had control over Coles or the car before they pulled Coles from the car, however.  Coles still retained the keys, it was unknown whether he had a weapon, and unclear whether he had egress from the parking lot on either or both sides of the car.  At the hearing, Coles admitted that he moved his hands out of the officers' sight several times while he searched for the handle or door lock to open the door.  Moreover, "a suspect who repeatedly refuses to

comply with instructions or leave [his] car escalates the risk involved for officers unable to predict what type of noncompliance might come next." *Brooks*, 599 F.3d at 1028-29.

It is undisputed that Coles: (1) had been driving erratically in a stolen car at 2:50 in the morning; (2) refused to pull over on the street when signaled, instead driving to the back exit of a parking lot; (3) refused to get out of the car when ordered to do so; (4) remained in the car with the keys, while Defendants were on foot; (5) moved his hands out of Defendants' sight several times (while he claims he attempted to open the car door); and (6) smelled of alcohol (when Eagle broke the car window). Even assuming that Coles's movement of his hands out of the officers' sight was to repeatedly search for the car door handle, the officers had no way of knowing that was what Coles was doing. It was therefore eminently reasonable for Eagle and Robertson to be concerned that Coles possessed a weapon and could reach for it in seconds *while he remained in the car*. Clearly, the scene was not safe until Coles was out of the car and under Defendants' control.

Once Coles was out of the car, however, and Defendants had him on the ground, on his stomach, with both hands visible, weaponless, the threat was significantly diminished. While this factor weighs in favor of Defendants *until Coles was removed from the car*, it weighs in favor of Coles once he was on the

ground, being subdued by two armed police officers, at least one whom was kneeling on Coles's back.

### 3.    Whether Coles was Actively Resisting Arrest or Attempting to Evade Arrest by Flight.

It is undisputed that Coles did not pull over immediately when Eagle signaled.  Instead, Coles turned into a parking lot and proceeded to its farthest corner where there was an alternate, albeit blocked, exit.  Coles says he pulled into the lot for safety, rather than block the street, but does not explain why he continued to the Makaloa Street exit at the back of the lot, even though he says the concrete barriers were clearly visible.  This suggests that Coles was attempting to flee.

Moreover, although Coles claims that he could not open the car door, there is no dispute that the door and lock operated perfectly when Robertson checked them immediately after the arrest.  This supports a finding that Coles simply refused to leave the car when ordered to do so.  While Coles's resistance "may not have been violent or aggressive, those aspects are more relevant to the second *Graham* factor, leaving the fact of [his] resistance." *Brooks*, 599 F.3d at 1029.  This factor also weighs in Defendants' favor.

D.      **Availability of Alternative Methods**

The court should also look to "the availability of alternative methods of capturing or subduing a suspect" in evaluating the totality of the circumstances in excessive force inquiries.  *Davis*, 478 F.3d at 1055; *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994).  The Ninth Circuit Court of Appeals has recently cautioned, however, that the availability of alternative methods is not definitive and that "'the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them.'"  *Brooks*, 599 F.3d at 1029 (quoting *Scott*, 39 F.3d at 915).

It is uncertain what alternatives were available.  It was late at night, Coles was in a stolen car, he was driving and behaving erratically, he failed to pull over immediately, he refused to open the door and surrender, his hands were not always visible, and when the window was broken both police officers smelled alcohol.  The situation was rapidly becoming highly-charged.  Simply because Coles stopped the car, turned it off, initially placed his hands on the steering wheel, and was not overtly aggressive does not mean that Coles had no weapon or was under Defendants' control.  Although Coles was in fact unarmed, Defendants had no way of knowing this at the time they pulled him from the car.

Waiting for more police to arrive does not seem sensible under the circumstances, nor would that have likely precipitated a different result.  It is well established that police officers' safety concerns justify requiring a driver to exit his vehicle.  *See Pennsylvania v. Mimms*, 434 U.S. 106 (1977).  Moreover, the police may forcibly remove drivers who refuse to exit their vehicles.  *See, e.g., Johnson v. County of Los Angeles,* 340 F.3d 787, 793 (9th Cir. 2003) (holding that hard pulling and twisting to remove a suspect from a crashed getaway car was objectively reasonable even though the plaintiff asserted that the officer's conduct rendered him paraplegic); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005); *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002); *Rogala v. Dist. of Columbia*, 161 F.3d 44, 49, 54-55 (D.C. Cir. 1998); *Carter v. City of Post Falls, Idaho*, 2009 WL 2368436 (D. Idaho 2008).

## E.   <u>Totality of the Circumstances</u>

The court is mindful that it must not employ hindsight but must evaluate the officers' conduct from the "perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.  Under the totality of the circumstances here, the court finds that in the "tense, uncertain, and rapidly-evolving" situation that presented itself to Defendants when Coles failed to pull over immediately, drove to the back of a darkened parking lot, moved his hands from sight, and refused to exit

his car, and allowing for the split-second judgments they were required to make, there was no other acceptable alternative to secure Defendants' safety and to gain control over a reluctant suspect, except to break the car window and pull Coles from the car.  Thus, insofar as Coles alleges that Defendants employed excessive force by breaking the car window and pulling him from the car, this court disagrees.  The totality of the circumstances do not support such a finding.

Although the question is close, however, on this record, the court cannot conclude that the officers' use of force *once Coles was removed from the car* was reasonable.  Coles alleges that: "Once out of the car, Coles was thrown on the ground where Off. Robertson and Eagle repeatedly kicked Coles in the ribs, body, face and head.  Also, Off. Eagle continued to beat Coles with his baton.  Off. Robertson then fell on Coles with his knee, in the middle of his back, and remained there while Off. Eagle struck Coles in the head with his baton and then handcuffed him. Prior to being handcuffed, the officers tore off his blood spattered shirt and pants and left him in his underware."  (Compl. Doc. 1, at 8.)

Defendants dispute this version of the facts, stating that they used only the amount of force necessary to "place[ Coles] on the ground next to the vehicle . . . [and to] place Coles' hands behind his back as Coles was continuing to resist being placed in handcuffs."  (Doc. 84-3, Robertson Dec. at ¶ 12.)  Defendants

claim that Coles strenuously resisted their efforts to handcuff him, yelling

profanities and hooking his legs on the steering wheel to prevent them from pulling

him from the car.  Defendants concede, however, that once Coles was out of the

vehicle his hands were fully visible.  (*See id.*, ¶ 11.)  It is therefore unclear whether

Defendants had control over Coles once he was pulled from the car.  *See*

*Headwaters Forest Def.*, 276 F.3d at1130 (once police have control over a suspect,

the use of more force to bring the suspect under control may be unreasonable).

This scenario presents a classic case of dispute over what actually

occurred, raising a genuine issue of material fact about the nature and duration of

the force applied once Coles was out of the car.  "[I]f an excessive force claim

turns on which of two conflicting stories best captures what happened on the street,

*Graham* [*v. Connor*] will not permit summary judgment in favor of the defendant

official."  *Saucier*, 121 S. Ct. at 2164 (Ginsburg, J., concurring). This court cannot

determine the credibility of the parties' equally plausible alternatives.  Defendants

are not entitled to qualified immunity on Coles's claim that they used excessive

force against him once he was out of the car and summary judgment is DENIED.

**F.**     **Defendants' Subjective Intentions Are Irrelevant**

Because the issue may arise later, the court addresses Coles's

argument that, because the Honolulu Police Commission disciplined Eagle for two

incidents that occurred months after Coles's arrest, for using excessive force and discourtesy-profanity, Eagle's subjective intent should be considered in evaluating whether Defendants used excessive force against him.   (*See* Doc. 116-2, 2-7, HPD disciplinary reports.)

In *Whren v. United States*, 517 U.S. 806, 813 (1996), the Supreme Court held that, in evaluating the reasonableness of a traffic stop, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." The Court later  expanded *Whren*'s holding to other Fourth Amendment cases,  clarifying that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138  (1978)).  The evidence Coles presents to show Eagle's subjective motivation for allegedly using excessive force is therefore irrelevant to the reasonableness of the force used during the arrest.  *See Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010).

## IV.  **CONCLUSION**

Summary judgment in excessive force cases is granted sparingly, and it is not justified here.  Plaintiff has raised a triable issue of material fact on whether Defendants' conduct was objectively reasonable after they pulled him

24

from his car before they arrested him.  Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 12, 2010.



_____
David Alan Ezra
United States District Judge

*Coles v. Eagle, et al.*, Civ. No. 09-00167 DAE; ORDER DENYING MOTION FOR SUMMARY JUDGMENT; psas /Ords /dmp/2010/Coles, 09-167 (coles1.wpd)